UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re                                                      Chapter 11

FN BUILDING, L.L.C.                                        Case No.  11-10266

                            Debtor.
--------------------------------------------------------x




**<u>PLAN OF REORGANIZATION</u>**




Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
489 Fifth Avenue
New York, New York 10017
Telephone: (212) 593-1100
Fascimile: (212) 644-0544


ATTORNEYS FOR THE DEBTOR

## INTRODUCTION

F.N. Building L.L.C. ("Debtor"), proposes this Plan of Reorganization for the Debtor. **UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW)**.

## ARTICLE 1
## DEFINITIONS

As used in this Plan, the following terms will have the meanings hereinafter set forth:

1.1     **"Administrative Expense"** Any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

1.2     **"Administrative Expense Claim"**  A claim for payment of an Administrative Expense.

1.3     **"Allowance Date"** shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

1.4     **<u>"Allowed Claim"</u>** shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

1.5     **<u>"Allowed Secured Claim"</u>** shall mean an Allowed Claim for which a Claimant asserts and is determined by a Final Order to hold a valid, perfected and enforceable Lien, security interest or other interest or encumbrance in property in which the Debtor has an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under Section 553 of the Bankruptcy Code and such Claim is allowed by Final Order, but in any event only to the extent of the value, determined in accordance with section 506(a) of the Bankruptcy Code, of the Claimant's interest in the Debtor's interest in the property or to the extent of the amount subject to such setoff, as the case may be.

1.6     **<u>"Allowed Unsecured Claim"</u>** shall mean an Unsecured Claim to the extent same is allowed.

1.7     **<u>"Bankruptcy Case"</u>** shall mean this Chapter 11 bankruptcy case.

1.8 **"Bankruptcy Code"** shall mean Title 11 of the United States Code (11. U.S.C. § 101 <u>et</u>. <u>seq</u>.), as in effect on the Petition Date and as amended during the Bankruptcy Case.

1.9 **"Bankruptcy Court"** shall mean the Court as defined below.

1.10 **"Cash"** shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

1.11 **"Claim"** shall mean a right to payment as set forth in § 101(5) of the Bankruptcy Code.

1.12 **"Claimant"** shall mean the holder of a Claim.

1.13 **"Confirmation Date"** shall mean the date of the entry of the Confirmation Order.

1.14 **"Confirmation Hearing"** shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

1.15   **<u>"Confirmation Order"</u>** shall mean the order of the Court confirming the Plan.

1.16   **<u>"Court"</u>** shall mean the United States Bankruptcy Court for the Southern District of New York.

1.17   **<u>"Creditor"</u>** shall mean any entity that holds a claim against a Debtor.

1.18   **<u>"Debtor"</u>** shall mean F.N. Building L.L.C.

1.19   **<u>"Disputed Claim"</u>** shall mean the whole or any portion of any claim against a Debtor to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

1.20   **<u>"Effective Date"</u>** shall mean no later than the Date upon which the Confirmation Order is a Final Order, provided, however, that in the event that the transactions contemplated by the Plan cannot be completed by such date, then the Effective Date may be extended through May 31, 2011.

1.21   **<u>"Estate"</u>** shall mean the estate of a Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

1.22    **"Executory Contracts"** shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

1.23    **"Final Order"** shall mean an order of the Court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

1.24    **"Interest"** shall mean an existing ownership interest in a Debtor.

1.25    **"Interest Holder"** shall mean a holder and owner of an existing Interest in a Debtor.

1.26    **"Lien"** shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

1.27    **"Petition Date"** shall mean January 25, 2011, the date of the Debtor's filing under Chapter 11 of the Bankruptcy Code.

1.28    **"Plan"** shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

1.29    **<u>Property</u>"** shall mean the Debtor's real property located at 660 Woodward Avenue, Detroit, Michigan.

1.30    **"<u>Secured Claim</u>"** shall mean a Claim secured by a Lien on property included within a Debtor's Estate.

1.31    **"<u>Secured Creditor</u>"** shall mean the owner or holder of a Secured Claim.

1.32    **"<u>Unsecured Claim</u>"** shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in encumbrance against property of a Debtor or a Debtor's Estate; (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim  includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include administrative of priority claims.

1.33    **"<u>Unsecured Creditor</u>"** shall mean the owner or holder of an Unsecured Claim.

**ARTICLE 2**

**CLASSIFICATION AND TREATMENT OF CLAIMS**

**Class 1: City of Detroit Secured Claims**

2.1    **Classification** – Class 1 consists of the pre-petition City of Detroit liens for unpaid real estate taxes and related charges.

2.2   **Treatment** – The holder of the Class 1 Claim shall be paid in full in Cash on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

2.3   **Voting** – Class 1 is unimpaired and is deemed to have accepted the Plan.

**Class 2: Mechanics Liens**

2.4 **Classification** – Class 2 consists of Mechanics lien claims senior in priority to the first Mortgage.

2.5    **Treatment** – Payment in full in cash of Allowed Amount on the Effective Date, plus interest at the statutory rate as it accrues from the Petition Date.

2.6   **Voting** – Class 2 is unimpaired and is deemed to have accepted the Plan.

## Class 3: First Mortgage

2.7     **Classification** –     Class 3 consists of the Claim of FNB Detroit 2010 LLC.

2.8     **Treatment** – Payment of available cash up to the Allowed Amount of the

Class 3 Claim, after payment of administration claims and Class 1, Class 2 and Class 4 Claims, and after

$100,000 carve-out for distribution to Class 5 general unsecured creditor claims to the extent necessary

to ensure a $100,000 payment to Class 5 Claimants.

2.9     **Voting** –   The Holder of the Class 3 Claim is impaired and is entitled to

vote to accept or reject the Plan.

## Class 4: Priority Claims

2.10     **Classification** –   Class 4 consists of Allowed Priority Claims under

Sections 507(a)(2),(3),(4),(5),(6),(7),and (8) of the Bankruptcy Code.  The Debtor is aware of no

Class 4 Claims.

2.11     **Treatment**  –   Holders of Class 4 Claims shall be paid in full in Cash plus

interest at the applicable legal rate on the Effective Date.

2.12 **Voting** – Holders of Class 4 Claims are unimpaired and are deemed to have accepted the Plan.


## Class 5: General Unsecured Creditors


2.13 **Classification** – Class 5 consists of Allowed Unsecured Claims.


2.14 **Treatment** – Each Holder of a Class 5 Claim shall be paid its pro-rata share of the available cash after payment of administration claims and Class 1 through Class 4 Claims, provided, however, that the Class 3 Claimant has agreed to a $100,000 minimum distribution fund which will provide for an estimated distribution to general unsecured creditors of approximately 15% of the allowed amounts of their allowed claims.


2.15 **Voting** – Holders of the Class 5 Claims are impaired and are entitled to vote to accept or reject the Plan.


## Class 6: Equity Interests


2.16 **Classification** – Class 6 consists of Skyloft, LP, the Debtor's sole equity member.

2.17     **Treatment** – The Class 6 Equity Holder shall be paid such amount as may be available after payment of the Class 1 through 5 Claims, and thereafter the Debtor will be dissolved.

2.18     **Voting** –  The Holder of Class 6 Equity Interests is impaired and is entitled to vote to accept or reject the Plan.

# ARTICLE 3

## ADMINISTRATIVE EXPENSES

3.1     Allowed Administrative Expenses shall be paid in full in Cash on the Effective Date, or the date such Administrative Expense becomes Allowed, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtor shall be Paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  Any outstanding U.S. Trustee fees shall be paid in full in Cash on the Effective Date.   United States Trustee fees will be paid, and operating reports will be filed as they come due by the Debtor.

# ARTICLE 4

## MEANS FOR IMPLEMENTATION OF THE PLAN

4.1     The Debtor shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan, including, without limitation, transferring the Property to the Purchaser as provided for in the contract annexed to the Plan as Exhibit A. As set forth more fully in the purchase agreement, the Plan proposes a private sale to the Purchaser for an  $8,3750,000 purchase price.  The transfer of the Property under the Plan shall be free and clear of all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the Sale Proceeds, and to be disbursed under the Plan.  In addition, the Debtor shall distribute the remaining funds in the Receiver's account after the Receiver has completed his accounting and made all of his disbursements.

4.2     In the event that the proposed private sale fails to close, then the Debtor proposes to retain a national real estate brokerage firm and conduct an auction sale of the Property in the Bankruptcy Court.  In that event, the terms of sale shall be substantially as set forth in Exhibit B to the Plan.

4.3     As part of the sale under the Plan, and in order to ensure consummation of the Plan, the Plan requires that  the Confirmation Order contain the following findings of fact and conclusions of law: (a)  that the terms and conditions of the sale are fair and reasonable, (b) that the Debtor's sale, and the purchaser's purchase, of the Property pursuant to the Plan and the

purchase agreement, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

       4.4      Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax,

conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment.

4.5     Except as otherwise provided herein, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Except as otherwise provided herein, as of the Effective Date, all property of the Debtor shall be free and clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

4.6     The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

4.7     Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

4.8     On the Effective Date, the receivership shall be deemed concluded and terminated and any and all interests and rights in and to all property, held by or entitled to be received by the Receiver, shall be transferred to the Debtor after payment or a reserve to be held by the Receiver for all outstanding debts and obligations incurred by the Receiver prior to closing.  As soon as practicable Effective Date, the Receiver shall provide the Debtor with a final accounting as to all sums collected by the Receiver during the receivership and the application thereof.  The foregoing, the Receiver shall be entitled to hold back from turnover to the Debtor, the claimed amount of receivership fees and expenses, including legal fees, pending approval of such fees by the Bankruptcy Court.


## ARTICLE 5

### PROVISIONS FOR THE RETENTION, ENFORCEMENT AND SETTLEMENT OF CLAIMS BELONGING TO THE DEBTOR OR THE DEBTOR'S ESTATE


5.1     All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to Section 547 of the Bankruptcy Code, all fraudulent transfer claim pursuant to Section 548 of the Bankruptcy Code, and all claims relating to post-petition transactions under Section 549 of the Bankruptcy Code shall be preserved for the benefit of the Debtor's estate.

# ARTICLE 6

## PROVISIONS FOR DISTRIBUTION TO CREDITORS, THE RESOLUTION OF DISPUTED CLAIMS AND OBJECTIONS TO PROOFS OF CLAIM

6.1     **Objections to Claims**.  The Debtor may file objections to Claims for a period of 120 days after the Effective Date.

6.2     **Disbursing Agent**.  The Debtor shall be disbursing agent under the Plan.

6.3     **Undetermined Claims Reserve**.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

# ARTICLE 7

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

      7.1    **Assumption**. All unexpired leases and executory contracts not rejected prior to the Effective Date shall be assumed under the Plan.

      7.2    **Claims Upon Rejection**.  In the event of a rejection of any Executory Contract which results in damage to the other party or parties to the Executory Contract, a Proof of Claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the Effective Date.  All Allowed Claims arising from the rejection of any Executory Contract shall be treated as an Unsecured Claim.

      7.3    **Failure to File**.  Any Claim arising from the rejection of any Executory Contract not filed with the Court within the time period provided in the preceding paragraph above shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

**ARTICLE 8**

**RETENTION OF JURISDICTION**

8.1     **Retention of Jurisdiction**.  The Court shall have jurisdiction over all matters arising under, arising in, or relating to the Debtor's Bankruptcy Case including, but not limited to, proceedings:

8.2     To consider any modification of the Plan under section 1127 of the Bankruptcy Code;

8.3     To hear and determine all Claims, controversies, suits and disputes against the Debtor to the full extent permitted under 18 U.S.C. §1334 and 28 U.S.C. §157.

8.4     To hear, determine and enforce all Claims  and causes of action which may exist on behalf of the Debtor or the Debtor's estate, including, but not limited to, any right of the Debtor or the Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code;

8.5     To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

8.6     To value assets of the Estate.

8.7     To enforce the Confirmation Order, the final decree, and all injunctions therein;

8.8     To enter an order concluding and terminating the Bankruptcy Case;

8.9     To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

8.10    To determine all questions and disputes regarding title to the assets of the Debtor.

8.11    To re-examine Claims which may have been allowed for purposes of voting, and to determine objections which may be filed to any Claims.

## ARTICLE 9

## GENERAL PROVISIONS

9.1     **Headings**.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

9.2 **Disputed Claims**.  The Debtor shall hold in escrow the distribution that would be due on account of any Disputed Claim.  No Disputed Claims shall be paid, nor shall distributions be made to a creditor holding a Disputed Claim, until such Claim becomes an Allowed Claim.

9.3 **Calculation of Time Periods**.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

9.4 **Other Actions**.  Nothing contained herein shall prevent the Debtor, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

## ARTICLE 10

## MODIFICATIONS

10.1 **Modification of Plan.**  The Debtor may seek amendments or modifications to the Plan in accordance with section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtor may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.

# ARTICLE 11

## INJUNCTION AND PROPERTY OF THE ESTATE

11.1 **Injunction**.  The confirmation of this Plan shall constitute an injunction of the Court against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Debtor or its property or properties, any obligation or debt except pursuant to the terms of the Plan.

11.2 **Vesting of Property**.  Except as otherwise provided in the Plan, on the Effective Date title to all of the Debtor's assets shall pass to the post confirmation Debtor or its designee free and clear of all Claims and Interests, in accordance with Section 1141 of the Bankruptcy Code.

# ARTICLE 12

## CLOSING THE CASE

       12.1    Upon substantial consummation, the Debtor may move for a final decree

to close the Bankruptcy Case and to request such other orders as may be just.


Dated:      New York, New York
               March 2, 2011

                                     **BACKENROTH FRANKEL & KRINSKY, LLP**
                                     **Attorneys for Debtor**


                 By:     <u>s/Mark A. Frankel (MF-8417)</u>
                        A Member of the Firm
                        489 Fifth Avenue
                        New York, New York 10017
                        (212) 593-1100

# Exhibit A to be Supplied

# Exhibit B

**Exhibit B**

**BIDDING AND AUCTION PROCEDURES**

A.              STEP ONE BID SUBMISSION

Bids ("Bids") will be solicited for the sale of the real property known as 660 Woodward Avenue, Detroit, Michigan (the "Property").  Information concerning the Property is available through _____ ("'Broker").

The bid deadline (the "Bid Deadline") is 5:00 p.m. on _____, 2011.  The Required Bid Materials (as defined below) must be submitted to bankruptcy counsel for the Debtor, Backenroth Frankel & Krinsky, LLP, ("BFK") 489 Fifth Avenue, New York, New York 10017.

The required bid materials (the "Required Bid Materials") are as follows:

(a)              Offer: A written offer in the form attached hereto as Exhibit 1. Such written offer must expressly (i) state that the Bidder's offer is irrevocable until the earlier to occur of (x) the Closing (as defined herein) or (y) ninety (90) days following the last date of the Auction, as adjourned and (ii) disclose whether the Bidder or any of its officers, directors, shareholders, members or partners is a shareholder, employee, or affiliate of the Debtor, or a relative of a shareholder, employee, or affiliate of the Debtor.

(b)              Deposit: Each Bidder shall tender a deposit equal to ten percent (10%) of the Bid amount (the "Deposit"). The Deposit

shall be by cashier's check payable to the Debtor. BFK will hold the Deposit of the highest and best Bidder (the "Winning Bidder") at the Auction and the Deposit of the second highest and best Bidder (the "Backup Bidder") at the Auction (or place such Deposits into a non-interest bearing IOLA account) until three (3) business days after the consummation of a sale of the Property, but in no event later than 90 days following the Court approval of the sale. The Debtor will cause BFK to return the Deposits of all other Bidders within three (3) business days of the conclusion of the Auction. At the conclusion of the auction the Winning Bidder must supplement its deposit so that it is increased to equal 10% of the winning Bid. BFK shall have no liability to any party in connection with its services as escrow agent with respect to Deposits except for willful misconduct, gross negligence or bad faith.

(c)     Executed Contract: An executed and fully completed copy of the sale contract in the form attached hereto as Exhibit 2, marked to show any changes made.

(d)     Financial Information: Written evidence of a commitment for financing or other evidence of ability to consummate promptly the transaction (such as a current financial statement or copies of Bidder's bank account statements for each of the three months preceding the auction).

Unless such requirement is waived by the Debtor, (a) only bidders that have Submitted qualified bids shall be eligible to participate in the Auction and (b) in order for a Bid to be a "Qualified Bid," a Bid:

(a)     shall include all of the Required Bid Materials;

(b)     shall not be contingent on obtaining financing or due diligence;

(c)     Shall be received by the Bid Deadline; and

(d)     Shall demonstrate the Bidder's ability to consummate promptly.

The Debtor and Broker shall determine the parties that have submitted Qualified Bids, and Broker shall notify those parties by email those parties who have submitted Qualified Bids by on or about 6:00 p.m. on the date that is three calendar days prior to the Auction Date.  To the extent that any party disputes whether any bid was improperly included or excluded as a Qualified Bid, such dispute will be considered by the Bankruptcy Court at the Auction Hearing.  All Bids shall remain open and irrevocable until the earlier to occur of (a) the Closing (as defined herein) or (b) ninety (90) days following the last date of the Auction, as adjourned.

E.    STEP TWO: The Auction: _____, 2011, at _____ __.m.

Following the receipt of Qualified Bids, an auction of the Property will be conducted at a hearing (the "Auction Hearing") to be held on October ___, 2011, at _____ __.m. before the Honorable Sean Lane at the United States Bankruptcy Court, One Bowling Green, New York, New York, 10004.  Unless such requirement is waived at the Auction Hearing, only Qualified Bidders will be allowed to participate at the Auction.

At the Auction, the opening bid shall be not less than $_____ million and bidding shall be in increments of $50,000.  The Property will be sold to the Bidder with the highest and best offer (the "Winning Bidder").  The Backup Bidder shall be the Bidder

with the second highest and best Bid.  The Debtor's selection of the Winning Bidder and the
Back Up Winner Bidder shall be subject Bankruptcy Court approval.

The Winning Bidder shall supplement its Deposit within one (1) business
day of the Auction so that, to the extent necessary, such Deposit equals ten percent (10%) of the
highest and best Bid accepted by the Debtor at the Auction.

F.    The Closing

The sale of the Property shall take place at the New York, New York
offices of BFK (or another location mutually acceptable to the parties) within ten (10) business
days following the entry of an order by the Court approving the transaction with the Winning
Bidder (the "Closing").

WITH RESPECT TO THE CLOSING, TIME OF PERFORMANCE BY THE WINNING
BIDDER IS OF THE ESSENCE.

In the event of that the Winning Bidder fails to consummate the sale after
the Sale Hearing because of a breach or failure on the part of the Winning Bidder, the Backup
Bidder, as identified at the Sale Hearing, shall be deemed the Winning Bidder without further
order of the Court, and shall proceed to Closing no later than thirty (30) days after notice by the
Debtor to the Backup Bidder of the default by the original Winning Bidder.  The Debtor shall be

entitled to retain the Deposit of any Winning Bidder who fails to close the transaction because of a breach or failure by such Winning Bidder. Such Deposit shall be deemed forfeited by such defaulting Winning Bidder and shall not be credited against the purchase price paid by the Backup Bidder.

The balance of the purchase price to be paid at closing shall be paid by wire transfer or a bank check or wire at the Closing.

H. Miscellaneous Terms of Sale

Any sale of the Property shall be without representations or warranties of any kind, nature or description by the Debtor, its agents, representatives, consultants and/or attorneys. The Property shall be transferred on an "as is" and "where is" basis.

Subject to Bankruptcy Court approval, all of the Debtor's rights, title and interests
in and to the Property shall be sold pursuant to Sections 363 and 365 of the Bankruptcy Code, free and clear of all liens, claims, encumbrances, and security interests, all of which shall attach to the net proceeds received by the Debtor as a result of the sale with the same force, effect and priority that currently exists, subject to this and further order of the Court.

The Debtor's Plan provides for the exercise of the Debtor's rights under section 1146 of the Bankruptcy Code, however, to the extent such amounts may nonetheless come due, all sales, transfer and recording taxes, stamp taxes or similar taxes, if any, relating to the sale of the Property shall be the sole responsibility of the Winning Bidder and shall be paid to the Debtor at the Closing.

The Property shall not be deemed to have been sold by the Debtor until such proposed transaction is in fact consummated. Any and all disputes related or pertaining to any aspect of the marketing, Auction or the sale of any of the Property shall be adjudicated solely by the Bankruptcy Court. The submission of a Bid shall constitute an express consent to the exclusive jurisdiction of the Bankruptcy Court for all matters related to the marketing, Auction and/or the sale.

**Exhibit 1**

## OFFER & BIDDER REGISTRATION

Bidder,

_____, does hereby offer to

purchase on an all-cash basis the Debtor's Property for the following purchase price:

$_____.

Bidder hereby warrants and represents as follows:

(a)     This written offer is subject to the terms and conditions of the accompanying

contract and the "Bidding and Auction Procedures."

(b)     This written offer along with any subsequent verbal bids are irrevocable until the

earlier to occur of (i) the Closing (as defined in the Bidding and Auction Procedures) or

(ii) ninety (90) days following the Auction.

(c)     This written offer is not contingent upon any financing.

(d)     That, except as detailed on an accompanying affidavit, if any, neither Bidder nor

any of its officers, directors, shareholders, members or partners is a shareholder, employee, or

affiliate of the Debtor, or a relative of a shareholder, employee, or affiliate of the Debtor.

(e) _____ ("Broker") has been retained by the Debtor to act as the Debtor's real estate broker. The Debtor shall be responsible solely to Broker for any brokerage fees in connection with the sale of the Property.  Bidder will be responsible for, and agrees to indemnify, defend and hold harmless the Debtor and Broker from and against any brokerage fees or commission claimed by any person asserting entitlement thereto at the alleged instigation of the Bidder for or on account of its Bid and the transaction contemplated in connection therewith.

(f) That Bidder had an opportunity to, or waived any right to, inspect and examine the Property identified above and all other pertinent documents with respect thereto prior to making its offer and that Bidder relied solely on that review and upon its own investigation and inspection of the Property in making its offer; that Bidder is not relying upon any written or oral statements, representations or warranties of the Debtor, its agents, representatives, consultants and/or attorneys, and that Bidder has obtained a complete copy of the "Bidding and Auction Procedures" and has read and understood same and agrees to abide by and be bound by such "Bidding and Auction Procedures."

AGREED & ACCEPTED this ____ day of _____, 2011.

By:

Name:

Title:

BIDDER I.D.

Bidder's Address: _____

Bidder's Contact: _____

Bidder's Phone/Facsimile_____

Bidder's Email Address:_____

Bidder's Tax ID Number: _____




ATTORNEY I.D.

Bidder's Attorney: _____

Bidder's Attorney's Address: _____

Bidder's Attorney's Phone/Facsimile #_____

Bidders' Attorney's Email Address:_____


BANK REFERENCE

Bank Name & Bank Contact: _____

Bank Address:_____

Bank Contact's Phone Number: _____

CONTRACT dated as of the _____ day of _____2011, between FN Building, L.L.C., A New York General Partnership having an address c/o Backenroth Frankel & Krinsky, LLP, New York, New York 10017 (the "Seller") and _____, having an address at _____ ("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

## 1. Sale of Premises

Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this contract: (a) the parcel of land more particularly described in Schedule A attached hereto ("Land"); (b) any building and any improvements situated on the Land ("Building"); (the Land and the Building are herein collectively referred to as the "Premises"); together with all right, title and interest of the present owner of the Premises, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof. The Premises is a commercial building known as 660 Woodword Avenue, Detroit Michigan.

Paragraph 1.02. Purchaser acknowledges that the Sale is pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Court") in Case No. 11-10266.

Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by the Orders and by the provisions of the United States Bankruptcy Code.

## 2. Purchase Price, Acceptable Funds

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Premises is _____ ($ ) Dollars, payable as follows:

(A) on the signing of this contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding and Auction Procedures as defined in Article 3 hereof (the "Downpayment") in the amount of $_____.

(B) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Cash Balance") in the amount of $_____.

(C) THIS CONTRACT IS NOT SUBJECT TO ANY MORTGAGE CONTINGENCY.

Paragraph 2.02. All monies payable under this contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any bank, savings bank, trust company or savings and loan association having a banking office in the City of New York or (b) official bank checks drawn by any such banking institution, payable to the order of Seller (as Seller shall direct) and bearing no endorsements, except that Attorney's Escrow Checks of Purchaser payable to the order of Seller(or as Seller directs) up to the amount of $1,000.00 shall be acceptable for sums other than the Purchase Price payable to Seller at Closing or (c) by wire transmission.

### 3.  Escrow of Downpayment

Paragraph 3.01.  (a)  The Downpayment shall be paid by check or checks drawn to the order of and delivered to Seller's attorneys, Backenroth Frankel & Krinsky, LLP ("Escrowee").  The Escrowee shall hold the Downpayment in escrow in a non-interest bearing IOLA Account until the Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this section.  At the Closing, the Downpayment shall be paid by Escrowee in accordance with Bidding Procedures. If for any reason the Closing does not occur, except for the default of the Seller, Escrowee is hereby authorized to make such payment to the Seller or if the Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this contract or an order of the Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds with the clerk of the Court. Escrowee shall give written notice of such deposit to Seller and Purchaser.  Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this contract or involving gross negligence.  Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this contract or involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute

between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Downpayment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

## 4. The Closing

Paragraph 4.01. The conveyance of title to the Premises by the Seller to Purchaser, and payment of the Balance by Purchaser to the Seller or as Seller directs shall take place the later of 45 days after the auction or 10 (ten) business days following the entry of an Order approving the transaction (the "Closing"). Said Closing is to be held at the office of the Escrow Agent.

## 5. Acknowledgments of Purchaser

Purchaser acknowledges that:

Paragraph 5.01. Purchaser has inspected the Premises, is fully familiar with the physical condition and state of repair thereof, and shall accept the Premises "as is" and in their present condition, including the environmental hazards as stated in the Terms of Sale and as annexed hereto without any reduction the Purchase Price for any change in such condition by reason thereof subsequent to the date of this contract.

Paragraph 5.02. Before entering into this contract, Purchaser has made such examination of the Premises, the physical condition and state of repair thereof including the environmental conditions. In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any other person representing or purporting to represent Seller, which are not expressly set forth in this contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser to close in accordance with the terms of this agreement, then the damages due to the Seller, by reason of said default, shall be deemed liquidated in the sum of money deposited upon the signing of this Contract as the Downpayment this day as hereinabove set forth, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

## 6. Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 6.01. A quit claim deed, executed by the Seller in proper form for recording so as to convey to Purchaser the fee title to the Premises, as required by this contract and the Terms of Sale.

Paragraph 6.02. All required real property tax forms, questionnaires, and affidavits and Michigan transfer tax returns executed by Seller to be issued at the Closing and delivered to the representative of Purchaser or Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 6.03. Seller shall not, be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the premises, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 6.04. Any other documents required by this contract or by law to be delivered by Seller to consummate this transaction.

## 7. Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 7.01. To the Seller monies as defined above in payment of the Cash Balance.

Paragraph 7.02. All required real property tax forms, questionnaires, and affidavits, and Michigan transfer tax returns, and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser or Purchaser's title company for delivery to the appropriate public officers promptly after the closing. Purchaser will pay all applicable transfer taxes and recording fees.

Paragraph 7.03. Any other documents required by this contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

## 8. Apportionments

Paragraph 8.01. The parties specifically acknowledge that there shall be apportionments made as of the date of closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

## 9. Termination of Contract

Paragraph 9.01. This contract shall be void unless the Court approves the Sale or if Seller shall be unable to cause title to the Premises to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this contract. Purchaser, nevertheless, may elect either (i) to accept such title as Seller may be able to have conveyed, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller, or (ii) to terminate this contract. The sole liability of Seller shall be to refund the Downpayment thereon and to Purchaser this contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this contract, except as may otherwise be provided in this Contract.

Paragraph 9.02. Purchaser shall take title to the subject premises "as is" and subject to: rights of tenants and persons in possession; to any state of facts an accurate survey may show; to encroachments, covenants, easements, and restrictions of record, if any; to violations, fines, penalties, zoning regulations, and ordinances of the City, County, State, or other district in which said premises lie;.

## 10. Notices

Paragraph 10.01. All notices under this contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Seller's Attorney at the address set forth below, and to Purchaser addressed to Purchaser's Attorney at the address set forth below.

Seller's attorneys, Backenroth Frankel & Krinsky, LLP 489 Fifth Avenue, New York, New York 10017.

Purchaser's Attorney: _____

## 11. Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 11.01. Except as otherwise expressly set forth in this contract, no representations, warranties, covenants or other obligations of Seller set forth herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 11.02.  The delivery of the deed and the acceptance thereof by Purchaser, shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this contract to survive the Closing.

## 12.  Assignment of Contract

Paragraph 12.01.  Purchaser shall not assign this contract or its rights hereunder without the prior written consent of Seller, not to be unreasonably withheld, and any purported assignment without such consent shall be void. Nevertheless, an assignment of Purchaser's rights under this contract, if and when consented to, shall not be effective against Seller unless and until an executed counterpart of the instrument of assignment and of an assumption agreement by the assignee shall have been delivered to Seller.

## 13.  Miscellaneous Provisions

**Paragraph 13.01 THE PROVISIONS OF THE BIDDING AND AUCTION PROCEDURES AND THE ORDERS OF THE BANKRUPTCY COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND SAID PROCEDURES OR ORDERS.**

Paragraph 13.02.  Subject to the provisions of Paragraph 13.01, this contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this contract.  Neither this contract nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 13.03.  This contract shall be governed by, and construed in accordance with, the Bankruptcy Code and the Orders of the Court and where it does not conflict with the Code or Orders) the laws of the State of New York.

Paragraph 13.04.  The captions in this contract are inserted for convenience or reference only and in no way define, describe or limit the scope or intent of this contract or any of the provisions hereof.

Paragraph 13.05.  This contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 13.06.  This contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.01a hereto.

Paragraph 13.07.  As used in this contract, the masculine shall include the feminine and neuter, the singular shall include the plural and the plural shall include the singular, as the context may require.

Paragraph 13.08.  Subject to Paragraph 13.01, if the provisions of any schedule or rider to this contract are inconsistent with the provisions of this contract, the provisions of such schedule or rider shall prevail.

Paragraph 13.09   Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than the Broker and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker.   Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorney's fees arising out of the breach on their respective parts of any representation or agreement contained in this paragraph.  The provisions of this paragraph shall survive Closing or, if Closing does not occur the termination of this contract.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the date first above written.

Seller:

By: _____

Purchaser:

By:_____